Good morning, your honors. May it please the court. My name is Brian Ginter, and I am here today on behalf of Sharon Kim, an officer of the Los Angeles Police Department. I would like to first note that I would like to reserve approximately five minutes of my allotted time to rebut arguments made by Mr. Harris's counsel. Okay, please watch the clock. I will, thank you. Your honors, we have taken this interlocutory appeal of the district court's denial of Officer Kim's assertion of qualified immunity, because in our view, the undisputed material facts show for the conduct at issue in this appeal, that Officer Kim acted as any reasonable officer would based on the information that was available to her at the time. We will therefore ask that this court reverse the district court's denial of Officer Kim's assertion of qualified immunity. Obviously, as we have stated, I believe numerous times now in our briefing, for only the conduct that is issue, that is at issue in this appeal, for the avoidance of any doubt, that does not include conduct that Mr. Harris's counsel focuses on, which includes Officer Kim's statements about Mr. Harris's tattoos and the effects of them. I will return to the specific conduct at issue in this appeal, but I would like to briefly address arguments made by Mr. Harris concerning whether this court has jurisdiction over this appeal. Mr. Harris argues that the district court's determination that disputes of material fact exist prevents this court from exercising jurisdiction over this appeal. However, the case of Cunningham v. City of Wenatchee, a case which is cited in our papers, in that case this court ruled that this court has jurisdiction, quote, from district court orders that decide not only that material facts are in dispute, but also that the defendant's conduct violated the plaintiff's clearly established rights. As I said, the Cunningham case is cited in our papers. The specific page from which that quote is referenced is 807, and that is a 2003 opinion of this court. We have clear distinction in our case law between challenges to a determination by the district court there are genuine issues of material fact, and challenges based on the legal question of whether or not a given violation is clearly established under the law. And it sounds to me like Cunningham is simply saying the same thing, that you can't challenge the district court's determination that there's a genuine issue of material fact, but you can challenge the question of whether the alleged misconduct or misstep was clearly established as improper. Am I wrong in my impression? Pardon me, Your Honor. My reading of the Cunningham case is slightly different. We can and we do challenge here the first prong of the qualified immunity analysis, and that is proper when the issues are relating to undisputed material facts. Well, that seems completely inconsistent with the case law, which you note in your reply brief in the N case, which says any decision by the district court the party's evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal. And you're now trying to challenge that. Does the determination by the district court that there are genuine issues of material fact as to whether Officer Kim fabricated evidence? With respect, Your Honor, I believe we were addressing that case because it was cited by Mr. Harris for the notion. Well, it's our law. I mean, whether it's cited by Mr. Harris or not, it's what our case law says. In your brief, you suggest that it's not really binding on us because it wasn't essential to the decision in Ng, and that's not really the standard. But that doesn't give an answer because our court has repeated that in multiple cases where it was essential to the conclusion. So how is it you can tell us that we're authorized to reexamine the question that there's a genuine issue when our case law says we can't? Respectfully, Your Honor, I believe the case law says that we can. I will refer you to Scott versus Harris, a United States Supreme Court case, which is often cited for the notion that the facts are undisputed when there is, for instance, objective evidence about the matters that for which the district court concludes there are disputes of material fact. In that case, Your Honor, if you do recall, involved a police chase for which there was camera evidence concerning the conduct at issue. And what the Supreme Court said is that despite the fact that the trial court and also the court of appeals determined that there was disputes of material fact in that case, that what this court should do, in fact, or should have done, was review the video that was at issue and make findings based upon the undisputed and clear objective evidence that was at issue in that case. But we don't have a video here. We do not have video, but what we have is similarly objective and clear. And that is the documents that relate to the underlying conduct at issue here. The reports prepared by Officer Kim, for instance. The reports prepared by Detective Parker of the Los Angeles Sheriff's Department. And also, frankly, Your Honors, the testimony by Mr. Harris himself. But we can only assume whatever is in those reports as true if the other side doesn't dispute them, right? And if there's actual factual dispute, then we have to read it in his favor. If there are factual disputes, but I think part of the reason why my colleague's analysis goes astray is that he focuses on whether, in fact, for instance, Mr. Harris actually self-admitted to an officer that he was a member of the gang. The issue is not whether there is evidence or a dispute of that underlying fact, whether there was a self-admission. The proper analysis centers on what Officer Kim knew and understood at the time. So if we assume, taking the facts, as Judge Lee says, taking the facts in the light most favorable to the non-moving party, and we assume that Harris never admitted that he was a gang member, does that change your analysis? It does not, Your Honor, because the undisputed material facts are, and the objective evidence are, the information that was available to Officer Kim at the time, which in fact, the district court concluded Officer Kim was entitled to rely upon, for instance, with respect to the self-admission, is field identification cards or FI cards that were submitted by or that were kept by other officers, and which Officer Kim was aware of, and which stated that Mr. Harris had self-admitted to being a member of the gang. And I think it's also important here, Your Honor, that there is no evidence that, for any reason to believe or any reason to doubt the veracity of the statements that were included in those FI cards. Is there any dispute over what the field identification cards say or what Officer Kim knew about? There is not, Your Honor. There is testimony in the underlying criminal case about what the FI card state, and I don't believe it is challenged by Mr. Harris here, what in fact is stated in those cards. Can you address the, I think the third example that Mr. Harris brought up, which was that Officer Kim said, that he said, is this about the robbery, and wrote that down in the report. And he says he was just responding to someone in the crowd saying it, and that excerpt wasn't included in the report. And you say that by itself, even assuming that's true, doesn't amount to fabrication of evidence, maybe. But where do we draw the line? because probably at a certain point, if you take something out of context, does it become fabrication of evidence? So for example, if someone said, it may look like I did it, but I didn't. An officer just quotes, it may look like I did it. I mean, would that be a fabrication of evidence? I'll answer your question this way, Judge Lee. I agree with you that the context is important here. One thing that is lacking in Mr. Harris' evidence is the context, the timing of the statements, for instance. It would be one thing if a person in the crowd made the statement about the fact that Mr. Harris were being arrested for the robbery. And it was clear that Officer Kim heard it, and following that example, it would be a different case if shortly thereafter, as is claimed by Mr. Harris, that Mr. Donnie Jobert made the statement, that's not his MO. And Officer Kim clearly understood that Mr. Harris was responding to those statements in a clear and direct way. But that's not the context here, Your Honor. I would contrast that situation with a situation where statements were similarly made by persons in the crowd. And then shortly thereafter, the suspect were being interviewed back at the police station without any prompting, without any context. The person says, is this about a robbery? So again, I believe the context is important. What doesn't happen here is equally important. Mr. Harris doesn't state, for instance, Officer Kim. I can hear from someone in the crowd that this is supposedly about a robbery, and Mr. Jobert said that this is not my MO. Am I being arrested for a robbery? That's not what happened here. According to Mr. Harris's own testimony, he basically wonders out loud whether he's being arrested for a robbery. And of course, Officer Kim hears it, is not required to make the connection between that statement by Mr. Harris and anything said by someone in the crowd, and accurately reports to Detective Parker that Mr. Harris did, in fact, make the statement. I see that I'm running close to my time, Your Honors. I will reserve the balance of it, if there are no further questions at this time. Thanks. Good morning, Your Honors, and may it please the Court. I'm David B. Owens, and I represent Derek Harris, who was wrongfully convicted as a result of the conduct committed by Defendant Kim, who is the defendant in this appeal. I think that the argument that you've just heard confirms that this court lacks jurisdiction over this appeal, and that it should be dismissed for want of jurisdiction. And because there really is no dispute that in 2013, it was clearly established that officers were on notice that they couldn't fabricate evidence. And I want to start, I don't mean to interrupt you, Your Honor. No. Okay. I wanted to start with the, Mr. Harris, in this case, brought a claim for the fabrication of evidence. Part of that claim involves Officer Kim making up that his tattoos were gang-related. You heard it on, it first appeared on page one of the reply brief. You heard it again here today. They're not challenging that. The District Court found, a reasonable jury can find that Kim fabricated evidence as it relates to Mr. Harris's tattoos. So there's no issue that falls within the narrow collateral bar doctrine for us to decide today because based upon Kim's concessions, there's going to be a trial on Harris's fabrication of evidence claims with respect to that due process count. And that's the thing that should go back. So based upon their concessions here today and in the reply brief, this is a case that should be dismissed quickly. Even setting that aside, I do think the issues that you've heard from Kim do dispute the issues of fact. And I want to go back to your colloquy about the Cunningham case, which is cited twice in their brief, but not for the proposition that Mr. Ginter cited it for today. What I think Cunningham says, Judge Clifton, is that in an interlocutory appeal, this court can, in some instances, have jurisdiction to address step one of qualified immunity, whether or not the Constitution was violated, or two, whether or not the right was clearly established at the time of the conduct. The only thing that this court needs to do is follow the jurisdictional rules for this posture, making sure that those are legal questions separate and apart from the merits, and they conclusively decide an issue. Here. Let me ask you this. I mean, our cases in the Supreme Court cases, they over and over, assuming all factual disputes are resolved and all reasonable inferences are drawn in plaintiff's favor, we can then decide the legal issue. So opposing counsel says, even making all the facts in the light most favorable to your client, Officer Kim still is entitled to qualified immunity. So could you address that? Yes, Your Honor. I think that's one thing for counsel to sort of say that and know that that's the legal standard, but hasn't actually adhered to it here today. So for example, if we accept what counsel said about the tattoos, then Officer Kim fabricated evidence, as the trial court found. But moving on to the other examples that were discussed earlier, for example, about the self-admission. Counsel neglected to mention that one of the F.I. cards at issue has to do with Officer Kim herself saying that Mr. Harris self-admitted to me. Harris denies ever self-admitting to anyone, but certainly to Officer Kim, that. So it's just a quintessential dispute of fact between two witnesses. Harris says, I didn't say this. Kim says, you said that. And I know that I memorialized that interaction from this document. Wasn't the to me, wasn't that a trial or at the hearing, not in the non-trial context? And there's immunity for whatever she said at trial, right? Yes, you're absolutely right, Your Honor. There is absolute immunity for that testimony. And so I think that the way this works in wrongful conviction cases like this, is typically the jury is given an instruction that the officers cannot be liable for their testimony because they are immune for it. And however, there's a little bit of attention when it comes to showing materiality or causation because you have to show that the fabrications caused the defendant harm in some way. But here, there's no question that the FI card that Kim created related to her own interactions with Mr. Harris was an antecedent basis for that testimony. So that's not an issue that's come up here. But there is that quintessential dispute. Then as it relates to the dispute of fact about Mr. Harris's statement during the course of his arrest, there are a few different things here. First, I do think it is a challenge to the trial court's finding of facts to say that, oh, we don't know whether or not Kim heard this or what her mental state was with that. Because the trial court found a reasonable jury could find that, you know, that this was part of her fabrication. Of course, the assumption there, the basic inference is that she heard the statement. Now, there's not a lot of evidence, and I'll admit this, in the record about whether or not Kim heard the statement or not. And the reason for that is because at summary judgment, in the moving papers, Kim below, Kim never said, I didn't hear the statement. And in fact, at her deposition, there was discussion of Mr. Joubert and all of that and the whole interaction. There's no dispute that Mr. Joubert was a person who was known to Kim and her partner. And there is a little bit of the record at 4 ER 700 where there is some questioning from Kim about interacting with Joubert during the course of Mr. Harris's arrest. So even though the legal standard is there and this court can assume jurisdiction in some of those instances you've identified, Judge Ikuda, that's just not the situation here because they are continuing to contest the facts and not accepting them in the light most favorable to the plaintiff. If they agree with you that we have to assume that Officer Kim heard it, but then we run into, you know, the second prong of qualified immunity. Is that clearly established for fabrication of evidence? And that's where it becomes a bit murky. I mean, is that really fabrication of evidence not including that? Maybe, maybe not. So, Your Honor, I do think that there's two things on this point. One is that it was, and I like your example better than the examples I try to come up with of, you know, it may look like I did it, but I didn't. And if you omit that part, so there's a whole line of cases about material omissions, right? So sometimes these could come up in the Frank's context where there's material omissions. If you leave that information out, it can make something look incriminating that is actually not incriminating like your example. And so, for example, Detective Parker, who this was reported to, says, you know, hired an expert, a police practices expert in this case to say there was probable cause. Part of the reason I believe there was arguable probable cause here is because he made consciousness of guilt type of a statement, a spontaneous statement showing consciousness of guilt. And I do think that there are Liston, which we cited, Benavidez, which we cited, and Franks and other authorities about where there are material omissions that sort of complement an affirmative statement that make it, that officers, that were clearly established that officers knew that they couldn't do. And that's also what this case, what this court held in Costanich, where it's these types of arguments at summary judgment, you can't make that type of a determination. Now, it could be the case at trial, Officer Kim says, you know, I told Parker X, Y, and Z, and he misreported that. She hasn't distanced herself from that report. She hasn't done anything like that. Instead, it is simply, it must be assumed at this juncture, I apologize, that as Officer Parker's own expert said, that this was an incriminating statement by an innocent person, and so I don't think there's an issue of clearly established law there because the facts themselves are not murky. Of course, if Mr. Harris just spontaneously spit out, is this about the murder or, you know, the armed robbery that happened to Blackwell, that would be a totally different thing. But they've painted a different picture here in their reporting and then subsequently in seeking criminal charges against Mr. Harris. The other thing that I wanted to briefly touch on, Your Honors, was about the issue with respect to the gang injunction. You know, it is just a straight-up form of fabrication and a misconstruing of a document to say, you know, that Mr. Harris was named in a gang injunction when he was not. He was served with it, and I do think, and I want to be clear about this because I know it is important that the standards for fabrication of evidence are rigid, they are high, and the trial court's determination here that that threshold has been met is a serious one. Had the reporting in this case said, you know, Harris was served with a gang injunction, we wouldn't be arguing about that. What the reporting in this case from the police officer says is that Harris was named in this gang injunction. There are 16 other people who are named in the injunction. None of them are Harris. And what you've seen, and I think that this shows how fabricated evidence can taint criminal proceedings and can taint court proceedings, is now you have the briefing in this court, in the reply brief in particular, mentions Harris was named in this, therefore he was named. There's no associative property here. Harris was not named in the document. That is a quintessential form of fabrication that was clearly established in 2013, certainly, and when combined with the testimony that is not even challenged here about Mr. Harris' tattoos, it's clear in our, and we would ask this court to accept, that this court lacks jurisdiction over those issues. And even if it does, the type of dispute here is in that quintessential statements that were never made, as in like Spencer and Caldwell and Costanich, where this court is clearly established and recognized decades before the police interactions in this case, that the rights at issue here are clearly established. I also wanted to mention finally and briefly, there's a Brady claim here, which didn't come up earlier, but the concession made in the reply brief and then again today at oral argument, that they're not challenging the allegations that Officer Kim fabricated evidence with respect to Mr. Harris' tattoos, that's also dispositive of the Brady claim as well, because their essential argument on the Brady claim is, while we recognize officers have an obligation under Kyle's, under Giglio, to disclose impeachment evidence, which could include things that impact the honesty of an investigation, Officer Kim didn't have anything to disclose because she didn't fabricate anything. But if they're not challenging the determination that a reasonable jury can find Kim fabricated evidence about Mr. Harris' tattoos, which is a bulk of her report about Mr. Harris at least, then the Brady claim, those things rise and fall together. So I just wanted to point that out. And if there are no further questions from the panel, I'll reserve my time. All right. Thank you for your argument. You have some time for rebuttal. You don't have time to reserve. Oh, I will yield the rest of my time. I apologize. Thank you, Your Honor. I just wanted to make sure you weren't misunderstanding. Got it. Okay. Thank you, Your Honors. I will return to my colleague's statements about the jurisdiction, or this Court's jurisdiction over this matter. I think where the analysis goes astray is that there is, the analysis by my colleague seems to be that it is a claim-based analysis. In other words, if there is any dispute of fact about any particular aspect of the claims that have been raised, then the entire claim must be returned to the District Court for determination. Respectfully, Your Honors, I believe the cases dictate that it is a conduct-based analysis. That the District Court and this Court is to look at the specific conduct in each separate instance of specific conduct and determine whether there is qualified immunity under either prong of the analysis for that specific conduct. I would refer for that particular assertion to the Rico versus Ducart case, which is a 2020 decision of this Court. And I would also refer to Devereaux versus Abbey, which is another decision of this Court. Well, I mean, the District Court was aware that there were different arguments that could be made, different factual arguments to be made about different sets of allegations. In the District Court's order, notes says, absent evidence that Officer Kim knew the FI cards were fabricated, those FI cards could have formed a reasonable basis for Officer Kim's belief that Harris was a member of the gang. It was gone to say that there's direct evidence about, we've heard about the tattoos and so forth, and that was enough to cause the District Court to conclude with regard to this claim, there was a genuine issue of material fact. Now, what's wrong with that analysis? Actually, Your Honor, I agree that the District Court correctly separated the different aspects of the conduct and determined whether qualified immunity applied for each specific aspect of conduct by Officer Kim. For instance, the District Court determined that Officer Kim was entitled to qualified immunity with respect to the issue about the search or the lack thereof, with respect to surveillance camera or video evidence that Officer Kim may or may not have been aware about at the time of the investigation and arrest and trial. Can you, you may have already addressed this, I missed this, but both of you talked about Officer Kim's statement about a gang tattoo and that's not being appealed here today. So does that mean that any claim based on that will, regardless of what we do, move forward at the District Court? Yes, Your Honor. Okay. In my limited time, I wanted to point out there was some discussion by my colleague about the evidence that we put forward that Officer Kim did not understand at the time that Mr. Harris was, at the time of his arrest, responding to someone in the crowd or anything that they said. In fact, in the record, Officer Kim testified that she believed the statement made by Mr. Harris at that time was spontaneous. That's at 4 ER 699. We've therefore met our burden to show that Officer Kim, at least in her understanding of the facts, believed that the statement made by Mr. Harris was spontaneous. Was that disputed by, in the record? Is there something in the record disputing that? I believe the dispute is about in Mr. Harris's own mind. He doesn't believe he's making, he believes he's responding to someone in the crowd in their statement as opposed to maintaining or making a spontaneous statement that might be inferred as a consciousness of guilt. Okay, thank you. I think we have your argument. The case of Harris v. Kim is submitted.
judges: CLIFTON, IKUTA, LEE